Stanley I. Greenberg (SBN 053649)
A Law Corporation
11845 West Olympic Boulevard, Suite 1000
Los Angeles, CA 90045-1574
Telephone: (424) 248-6600
Facsimile: (424) 248-6601
Email: stanmanlaw@aol.com

Attorney for Defendant:
PHILLIP LAURENCE COOPER

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | Case No.  CR 13-0706(A)-RGK |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **MOTION FOR JUDGMENT OF ACQUITTAL; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF STANLEY I. GREENBERG; EXHIBITS** |
| PHILLIP LAURENCE COOPER | ) | |
| Defendant. | ) | |

Defendant Phillip Laurence Cooper moves this Court for a judgment of acquittal. This motion is made pursuant to Rule 29, FRCrP, as well as the due process and fair trial provisions of the Fifth and Sixth Amendments.  It is based upon this pleading and the

//

//

//

1

documents attached, the files and records of the case, including the trial record, and such

other matters as may be adduced at or before the hearing of this motion.

Dated:  May 14, 2014                              Respectfully submitted,


                                                  _____/s/_____
                                                  Stanley I. Greenberg
                                                  Attorney for Defendant
                                                  PHILLIP LAURENCE COOPER

## MOTION TO DISMISS

Defendant Phillip Laurence Cooper moves this Honorable Court for a judgment of acquittal pursuant to Rule 29, FRCrP.  Per direction of the Court, Rule 29 motions were deemed to have been made at the close of the government's case, the defense case, and at the completion of all evidence, without prejudice to the Defendant.  Accordingly, this motion is made pursuant to all three subsections of Rule 29 (a) (b) and (c).

## MEMORANDUM OF POINTS & AUTHORITIES

## I

## Introduction

The heart and central theory of the prosecution case was that Mr. Cooper and co-defendant Alguire conspired to steal a government vehicle and to have Mr. Cooper falsely impersonate a federal law enforcement officer. This was set forth in the Count One conspiracy charge. Count Two charged Mr. Alguire with theft of the vehicle. Count Three charged Mr. Cooper with false impersonation, and Mr. Alguire with aiding and abetting him. Count Four charged Mr. Cooper alone with 3 separate false statements to a government agent, all during his interview of September 27, 2011.

The jury acquitted both defendants of the conspiracy count. Mr. Alguire was acquitted of the charges that he stole the vehicle (Count 2) and that he aided and abetted Mr. Cooper in falsely impersonating a federal law enforcement officer (Count 3). Mr. Cooper was convicted of Count 3 (false impersonation of federal officer) and Count 4 (false statement to a government agent). For the reasons set forth below, both convictions should be vacated and judgments of acquittal should be entered.

## II

## Standard of Review

The standard by which the judge is to be guided in passing on a motion for judgment of acquittal is the same regardless of whether the motion is at the close of the government's case, at the close of all the evidence, or after discharge of the jury. The

Court is to direct acquittal "if the evidence is insufficient to sustain a conviction." Rule 29, FRCrP.

### III

### Count Four—False Statements

We begin this discussion with Count 4 because it also impacts the discussion of Count 3. Count 4 charges Mr. Cooper with making 3 false statements to a government agent in violation of 18 U.S.C. § 1001. This charge arises from Mr. Cooper's interview with U.S. Forest Service Special Agents Lomvardias and Ealy on September 27, 2011. To be crystal clear, the government has failed to prove beyond a reasonable doubt that Mr. Cooper made the allegedly false statements; and therefore has also failed to prove beyond a reasonable doubt any false statements by Mr. Cooper.

The false statements alleged are these:

1.  Mr. Cooper remained in the vehicle at all times when coming into contact with others when, in fact, he got out of the vehicle at times when coming into contact with others;

2.  He did not say to anyone that he was a law enforcement officer when, in fact, he identified himself as a member of law enforcement to others; and

3.  He never requested identifying information from anyone when, in fact, he asked visitors to the national forest for identifying information. First Superseding Indictment ("FSI"), Count 4.

The most significant event of the trial bearing on this motion, we submit, was during the prosecutor's closing argument. He conceded to the jury there was a "failure of proof" with regard to the second false statement allegation. The prosecution presented no evidence that Mr. Cooper ever identified himself as a "law enforcement" officer, as alleged. The prosecutor asked the jury to disregard that allegation due to this failure of proof. This is important not only to the Count 4 false statement charge. It is also critical to the Count 3 false impersonation charge as well. The reason is the claim that Mr. Cooper verbally identified himself as a law enforcement officer was the underlying basis for the charge that Mr. Cooper falsely impersonated a federal law enforcement officer in Count 3. (See discussion regarding Count 3 below).

This Government concession of lack of proof left but 2 claims of false statements in Count 4 for the jury to consider:

**A. Mr. Cooper remained in the vehicle at all times when coming into contact with others; when, in fact, he did get out of the vehicle at times when coming into contact with others.**

The evidence was overwhelmingly clear that Mr. Cooper spent time both in and out of the Forest Service vehicle, openly and notoriously. It was hardly a secret, and he had no reason or purpose to lie about that.

Aside from the silly and improbable claim that Mr. Cooper "remained in the vehicle at all times," or that he false claimed that to be true, this was convincingly shown at trial to be a false charge by the government. SA Ealy's

contemporaneous notes of that interview were received by the jury and showed

without doubt he had attributed to Mr. Cooper the following statements:

> "exited vehicle to make contact
>
> Eddy stayed in car." (Defendant's Exhibit B).

Thus, the interviewing agent's very own notes prove just the opposite of

what the government alleges to be a false statement. These notes prove Mr.

Cooper stated that he <u>did</u> exit the vehicle when making contact.

The jury recognized this failure of proof when they disregarded this

allegation as being unproven. Instead, they based the conviction on the third

false statement allegation. (See attached Declaration of Stanley Greenberg

regarding statements of the jury foreman). We do not base this argument on the

statements of the jury foreman, but on the failure of proof itself.  The jury

foreman's statements simply confirm what is plain and obvious.

**B.  Mr. Cooper never requested or demanded information from anyone when, in fact, he asked some visitors to the national forest for identifying information.**

This, too, is a completely unproven charge.   It is unproven because it is

untrue.  SA Lomvardias conceded in his trial testimony that, when Cooper was

questioned if he had asked any visitors for their identifying information, Mr.

Cooper told him that he took ID's of Rudy Molina and two others that were

with Molina on September 25, 2011.[1]  This directly contradicts the false claim

that Mr. Cooper said he "never" requested any visitor's I.D.   Moreover, the

Government has always known this allegation to be untrue.   The investigative

report prepared by SA Lomvardias, and signed by <u>both</u> he and SA Ealy reads as

follows:

> "SA Ealy asked Cooper how many identification
>
> cards he took.  Cooper advised that he took a total
>
> of three identification cards from Rudy Molina on
>
> the evening of September 25."  (See marked portion
>
> of Exhibit A, attached).

Additionally, in a supplemental incident report prepared and signed by SA Ealy

alone, he wrote the following:

> "When asked if he [Cooper] had taken any ones
>
> [sic] ID he stated that he took Rudy MOLINA's ID
>
> (reporting party) and two others on September 25."
>
> (See marked portion of Exhibit B, attached).

Thus, the record is crystal clear that this is not only a false allegation by the

government, but it also suffers from a failure of proof at trial.  Both agents reported,

together and independently, that Mr. Cooper told them about taking the ID's of the

---

[1] References to trial testimony are from memory and notes.

8

reporting person, Molina, and two of his friends on September 25, 2011. SA Lomvardias

conceded this point in his testimony. It is thus not possible that Mr. Cooper could be

convicted of falsely claiming he never requested the ID's of visitors to the national forest

when the evidence so obviously and definitively contradicts that claim. Clearly the

evidence of this charge is insufficient to support a verdict.

## IV

## COUNT THREE—FALSE PERSONATION OF A FEDERAL OFFICER

The jury convicted Mr. Cooper of Count 3. This charges him with falsely

assuming and pretending to be an officer and employee of the U.S. Forest Service, **and**

acting as such. This requires proof beyond a reasonable doubt of two elements: (1)

pretending to be an officer or employee of the U.S. Forest Service; and (2) acting as such

(See Government's Jury Instruction 21). The statute requires two separate acts. It is not

sufficient for the same act to satisfy both the "impersonation" requirement **and** the

"acting as such" requirement. *U.S. v. Rosser*, 528 F. 2d 652 (D.C. Cir. 1976). Conviction

requires some conduct above and beyond what the government claims is the

impersonation element of the crime. 18 U.S.C. § 912; *Rosser, supra.*

The government obviously believed it had evidence that Mr. Cooper falsely and

verbally identified himself as a law enforcement officer. This is plain from the FSI. One

of the false statements alleged in Count 4 is that Mr. Cooper "did not say to anyone that

he was a law enforcement officer." The Government contended this was a false

statement. The Court will likely recall that no witness testified to that fact; and the

government conceded in its closing argument it had failed to prove this false statement allegation.  Thus, the charge that Mr. Cooper said he had not stated to anyone that he was a law enforcement officer is correct, rather than false. He did not say that.

This is of critical importance.  The claim that Mr. Cooper falsely represented himself as a law enforcement officer is the *sine qua non* of the false impersonation charge.  Indeed, there has never been a conviction for this charge <u>without</u> such a false representation.

Of the many cases of convictions for this statute, we can find none—not one—in which the defendant did <u>not</u> verbally identify himself as a law enforcement officer, <u>in addition</u> to some other conduct that meets the "acting as such" requirement. See, for example, *U.S. v. Bryant*, 117 F.3d 1464 (D.C. Cir. 1997) (defendant verbally claimed to be with the U.S. Marshal's office); *U.S. v. Gilbert*, 143 F.3d 397 (8th Cir. 1998) (defendant verbally claimed he was an officer with the U.S. Custom Service); *U.S. v. Bakhtiari*, 913 F.2d 1053 (2nd Cir. 1990) (defendant verbally claimed to be an employee of the U.S. State Department); *U.S. v. Martindale*, 790 F.2d 1129 (4th Cir. 1986) (defendant claimed he was employed by the U.S. State Department and displayed a false diplomatic passport); *U.S. v. Wells*, 893 F.2d 535 (2nd Cir. 1990) (defendant verbally claimed to be a federal officer); *Pierce v. U.S.*, 868 F.2d 949 (6th Cir. 1936) (defendant verbally claimed he was an officer with the Tennessee Valley Authority); *Russell v. U.S.*, 271 F. 686 (9th Cir. 1921) (defendant displayed a badge and said  he was "from the federal government"); *U.S. v. Larson*, 125 F. Supp. 360 (D. AK 1954)(defendant stated

he was a member of the FBI engaged in an investigation of a criminal violation);

*Dickson v. U.S.*, 182 F.2d 131(10th Cir. 1950) (defendant displayed a badge and said, "I

am a federal officer."); *U.S. v. Rosser*, 528 F.2d 652 (D.C. Cir. 1976) (defendant verbally

claimed to be an employee of the Internal Revenue Service); *U.S. v. Hessbrook*, 504 F.2d

1375 (5th Cir. 1974) (defendant claimed to be with the FBI); *Whaley v. U.S.*, 324 F.2d 356

(9th Cir. 1963) (defendant claimed to be with the FBI, and displayed a badge and leather

folder); *Heskett v. U.S.*, 558 F.2d 897 (9th Cir. 1932) (defendant claimed to be with the

immigration office and displayed a badge); *U.S v. Romero*, 293 F.3d 1120 (9th Cir.

2012)(defendant misrepresented himself as an immigration agent and promised to

expedite the victim's application in exchange for money).

    In addition, in each and every case, the falsely impersonating defendant sought

<u>some</u> personal benefit and/or exploitation of the person(s) deceived.  This is the "acting

as such" requirement of the crime and represents the essence of the "acting as such"

requirement.  Mr. Cooper sought no benefit and exploited no one.  We can find no case in

which the defendant did not seek to exploit someone and/or obtain some personal benefit.

This case stands alone. Should this conviction stand, this will be the first and only case in

which the defendant <u>both</u> made no false claim of authority, <u>and</u> sought no benefit and/or

exploitation of another.

    Given the absence of evidence of false impersonation, we turn to other potential

evidence the government might conceivably claim that satisfies the 2 required elements

of § 912; that is, (a) conduct that amounts to false impersonation; and (b) acting as such.

### 1.  Use of the Forest Service vehicle as false impersonation

In this trial, the prosecution's emphasis was on the use of the vehicle. But we know from the trial testimony that this vehicle was not sought by Mr. Cooper. Rather, it was Mr. Alguire's idea. He solicited Mr. Cooper.  The vehicle was selected by Fleet Manager Alguire, and given to Mr. Cooper in his capacity as a Forest Service volunteer.  Mr. Cooper did not steal, purloin or embezzle it. Rather, it was given to him, as a volunteer, by Alguire for the express purpose of driving it, moving it around and sitting in it. (In Alguire's words, "to establish a presence.")   In his capacity as a Forest Service volunteer Mr. Cooper was therefore authorized to operate the vehicle, and he did so with the express authorization of the Forest Service Fleet Manager.

Moreover, we submit the mere act of operating and/or sitting in the vehicle cannot satisfy the requirement that Mr. Cooper falsely impersonated a law enforcement officer. If he wore a uniform then perhaps the government might have some plausible argument. But Mr. Cooper was dressed in civilian clothes, obvious to everyone.  The plain language of the statute requires some positive, affirmative conduct beyond merely sitting in a vehicle or driving it.  Some affirmative conduct is required to establish "false impersonation."

The record is void of anything that would support the claim of false impersonation. Mr. Cooper made no verbal claim of being a law enforcement officer. He neither wore nor displayed any badge.  He wore no other indicia to indicate he was a law enforcement officer. He wore no uniform. He wore no gun belt with holster and paraphernalia often

associated with police. He never used the siren. He never activated the police lights on the light bar of the roof of the vehicle.  To the contrary, he went out of his way to assure he would <u>not</u> be taken for a law enforcement officer.  The witnesses testified he wore casual clothes, khaki's and a collared shirt hanging out; blue jeans with a T-shirt that said "M and M's." One witness said he was dressed "sloppishly."  This belies any conduct or intent to falsely impersonate a law enforcement officer. Therefore, sufficient evidence of affirmative false impersonation is plainly lacking.

### 2. The "Acting as Such" Requirement

Given the failure of proof that Mr. Cooper satisfied the impersonation element, we turn to the requirement of "acting as such."  Arguably, asking people for their identifying information might satisfy that element. However, it cannot satisfy <u>both</u> requirements of the statute.  And the "acting as such" element must be separate and distinct from the false impersonation element.  *Rosser, supra; Larson, supra.*

There is yet another, stronger, reason why the act of requesting identifying information cannot satisfy the "acting as such" requirement of the statute.  § 912 has not one but two specific prohibitions.  It prohibits impersonating a federal officer, AND, either:

(A) "Acting as such";

(B) ". . . or in such pretended character demands or obtains any money, **paper, document** or thing of value, . ." (Emphasis added).

13

Thus the statute has a specific prohibition against demanding things such as personal identifying information. It is described in the statute as "any . . . paper, document or thing of value." But this is not the provision that Mr. Cooper is charged with violating. Had he been so charged, we would concede that he did, indeed, obtain "papers" and "documents." But he was not so charged with obtaining papers or documents. Moreover, we would still not concede a violation of § 912 because of the failure of proof of the false impersonation requirement of the statute.

There is yet another reason why asking for identification cannot satisfy the requirement of "acting as such." To do so would violate a basic, fundamental rule of statutory construction. Courts should not construe a statute to make parts of it "mere surplusage." If asking for ID papers constitutes "acting as such," that would make the second part of the statute (which specifically prohibits asking for 'paper') "mere surplusage."

> "It is a well-established principle of statutory construction that 'legislative enactments should not be construed to render their provisions 'mere surplusage.'" *Am. Vantage Cos., Inc v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002). *U.S. v. Bendtzen*, 542 F.3d 722, 727 (9th Cir. 2008).

14

The point is that the "acting as such" provision cannot possibly apply to requesting visitors' identifying information, since Congress has included a specific provision for doing such.  Mr. Cooper is not charged with that violation.  Therefore, "acting as such" must mean something more and different than simply obtaining "paper, documents, or things of value."  And the government has failed to prove any such conduct that might arguably satisfy the "acting as such" requirement of § 912.

## V

## Public Authority and Good Faith

Finally, we submit that Mr. Cooper acted upon public authority and in good faith with respect to Count 3.  We believe the evidence supported both; and that he was entitled to have his "theory of defense" explained in the jury instructions.  *U.S. v. Baer*, 439 F.3d 565, 568 (9th Cir. 2006). We did request jury instructions as to both, which the Court declined to give.  The anticipated motion for new trial is the more appropriate place to argue this point. We mention it here, although the instructions were not given, so the court can take such defense evidence into account in ruling on this motion.

## VI

## CONCLUSION

The lynchpin of the prosecution's case has failed.  There is no evidence that Mr. Cooper ever falsely identified himself to anyone as a law enforcement officer.  Indeed,

the evidence proves exactly the opposite.  Without that evidence the remainder of the prosecution's case is insufficient to prove the charges or support the convictions.

The false statement charges are directly contradicted by the evidence, demonstrating the government's charge of false statements is itself falsely made.  Similarly, with no evidence that Mr. Cooper falsely identified himself as a law enforcement officer, the false impersonation charge falls as well.   There is no legally recognizable conduct to prove beyond a reasonable doubt that Mr. Cooper falsely impersonated a federal law enforcement officer.  Further, there is no legally recognized evidence that Mr. Cooper "acted as such." Finally, if the Government's theory is that Mr. Cooper "acted as such" by obtaining the identification cards of forest service visitors, they should have charged Mr. Cooper under that portion of the statute.  Having failed to do that, this charge, too is not supported by proof beyond a reasonable doubt.

WHEREFORE, for the foregoing reasons, this Court should grant the motion for judgment of acquittal as to Counts 3 and 4.

Dated: May 14, 2014                          Respectfully submitted,


                                             _____/s/_____
                                             Stanley I. Greenberg, Esq.
                                             Lawyer for Phillip Laurence Cooper

## DECLARATION OF STANLEY I. GREENBERG, ESQ

I hereby declare, under penalty of perjury, the following:

1. I am a lawyer licensed to practice before this court and I represent defendant Phillip Laurence Cooper.

2. Shortly after the jury returned its verdict I had a conversation in the rear of the courtroom with the jury foreperson. Also present was my associate, Evan Charles Greenberg.

3. The foreperson advised as follows with respect to Count 4. The jury concluded that the proof was insufficient with respect to the claim that Mr. Cooper was alleged to have told Lomvardias and Ealy that he remained in the vehicle at all times when contacting forest service visitors. They convicted on the allegation that Mr. Cooper said he never requested identifying information from anyone.

Date: May 14, 2014                    _____/s/_____
                                       Stanley I. Greenberg, Esq.
                                       Lawyer for Philip Laurence Cooper